O

# United States District Court
# Central District of California

TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST et al.,

Plaintiffs,

v.

UNION PAVING COMPANY,

Defendant.

Case № 2:24-cv-10939-ODW (MARx)

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT [25]**

## I.     INTRODUCTION

Plaintiffs bring this action against Defendant Union Paving Company for breach of a written collective bargaining agreement ("CBA") and violation of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") § 515, 29 U.S.C. § 1145. (First Am. Compl. ("FAC") ¶¶ 10–27.2, Dkt. No. 11.)  Union Paving moves for summary judgment on the grounds that the statute of limitations expired before Plaintiffs filed this lawsuit and that Union Paving did not breach its CBA with Local Union No. 12 after June 30, 2019, because Local Union No. 12 repudiated the CBA. (Mot. Summ. J. ("Motion" or "Mot.") 1–2, Dkt. No. 25.)  For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Union Paving's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.    BACKGROUND[2]

Union Paving is a licensed paving contractor operating in Southern California. (DSUF 1.)   The International Union of Operating Engineers, Local Union No. 12 ("Local 12") is a labor organization representing employees in the building and construction industry in Southern California.  (FAC ¶ 6.)  Plaintiffs are Trustees and Funds established for the benefit of Local 12's and its bargaining contractors' employees.  (*Id.* ¶ 5.[3])  The Southern California Contractors Association ("SCCA") is a multi-employer association that bargains on behalf of its contractor members with Local 12 for CBAs (also called Master Labor Agreements), for Operating Engineers' work in Southern California.  (DSUF 2.)

### A.    Facts

On or around October 11, 2018, Union Paving became a member of SCCA and authorized SCCA to bargain on its behalf with Local 12.  (DSUF 3.)  By virtue of that membership, Union Paving became a signatory to the July 1, 2016, through June 30, 2019 Southern California Master Labor Agreement ("MLA" or "Master Agreement") between Local 12 and SCCA.  (DSUF 3.)  The Master Agreement states that it "shall be effective" through June 30, 2019, "and shall continue from year to year thereafter, unless either of the collective bargaining representatives shall give written notice to the other of a desire to change, amend, modify or terminate the Agreement at least sixty (60) days' prior to June 30th of any succeeding year."  (Decl. Taylor Skeffington ISO

[2] The Court derives the material factual background from Defendant's Statement of Uncontroverted Facts ("DSUF"), (DSUF, Dkt. No. 25-2), Plaintiffs' Statement of Genuine Disputes ("PSGD") and Additional Material Facts ("PAMF"), (PSGD & PAMF, Dkt. No. 27), and Defendant's Responses thereto, (Resp. PAMF, Dkt. No. 39), in addition to the parties' clearly and specifically cited evidence, *see* C.D. Cal. L.R. 56-1 to 56-4.

[3] Plaintiff Trustees are Trustees of the Operating Engineers Pension Trust, Trustees of the Operating Engineers Health and Welfare Fund, Trustees of the Operating Engineers Vacation-Holiday Savings Trust, Trustees of the Operating Engineers Training Trust, and Trustees of the Operating Engineers Local 12 Defined Contribution Trust.  (FAC ¶ 5.)  Plaintiff Funds are Fund for Construction Industry Advancement, Engineers Contract Compliance Committee Fund, and Southern California Partnership for Jobs Fund.  (*Id.*)

Mot. ("Skeffington Decl.") Ex. 1 ("MLA") Art. XIX, Dkt. No. 25-3.[4])    Under the Master Agreement and related agreements, Union Paving was obligated to prepare and submit true, complete and accurate written monthly reports ("Monthly Reports") to Plaintiffs showing the employees who performed work covered by the Master Agreement, the hours those employees worked, and the calculation of fringe benefit contributions due for them.    (DSUF 20–21; FAC ¶ 13.)    Union Paving was also obligated to use Local 12 members for its projects, timely pay fringe benefit contributions, and permit Plaintiffs to conduct audits of Union Paving's payroll and related records.  (DSUF 20–21; FAC ¶ 13; PAMF 28.)

In March 2019, SCCA remained Union Paving's bargaining representative for negotiations concerning a successor Master Agreement following the expiration of the original Master Agreement on June 30, 2019. (DSUF 6.) On March 29, 2019, Local 12 Business Manager Ronald Sikorski sent letters to Union Paving's President and CEO, Taylor Skeffington, and SCCA's Director of Labor Relations, Mike Roddy, advising that Local 12 "wished to reopen" and modify the terms of the Master Agreement, but would not include Union Paving in future multi-employer bargaining.  (DSUF 7–8.) Sikorski wrote that Local 12 would only bargain with Union Paving on a single employer basis.  (DSUF 7.)

After June 30, 2019, when Skeffington contacted the Local 12 hiring hall on behalf of Union Paving to request dispatch of employees, Local 12 informed her it would not dispatch employees because Union Paving was not a signatory to a CBA with Local 12. (DSUF 11.) Also, in July 2019 and September 2019, Sikorski advised SCCA

---

[4] Although Plaintiffs object to Union Paving's MLA Exhibit 1 on numerous grounds, (Pls.' Evid. Objs. DSUF 2, Dkt. No. 30), Plaintiffs also rely on the exhibit for Plaintiffs' additional material facts, (*see* PAMF 28).  This may be because Plaintiffs unhelpfully submit only excerpts of the MLA.  (*See* Decl. Bernardo Ramos ISO Opp'n ("Ramos Decl.") Ex. 12, Dkt. No. 28-3.)  Regardless, as Plaintiffs rely on Union Paving's MLA Exhibit 1, the Court finds that Plaintiffs waive their objections to it.  Fed. R. Evid. 901(b)(4) (providing that evidence may be authenticated when its appearance and contents, "taken together with all the circumstances," indicate that the evidence is what its proponent claims).

and Union Paving that Local 12 would not sign a new CBA with Union Paving because Skeffington's father owned a non-union paving company.  (DSUF 9.)

On December 19, 2019, Local 12's collections clerk for Operating Engineers Funds, Inc., Denon Rushing, notified Union Paving that it was delinquent in submitting its Monthly Reports.  (DSUF 14.)  Due to the March 2019 letters, Sikorski's comments during negotiations, and Local 12's refusal to dispatch employees to Union Paving jobs, Union Paving believed it had not been signatory to Local 12 since June 30, 2019.  (DSUF 16.)  Thus, Skeffington responded to Rushing that Union Paving had "not been signatory to the Operating Engineers since June 2019" and had paid all dues through that period.  (DSUF 14; Skeffington Decl. Ex. 4 ("Rushing Delinquency Emails"), Dkt. No. 25-3.)  Rushing requested that Union Paving complete an "Inactive Status Form" to cease the Monthly Reports requirement, and Union Paving complied.  (Rushing Delinquency Emails UP0058; Ramos Decl. Ex. 20 ("Inactive Status Form"), Dkt. No. 34.)  On December 20, 2019, Rushing advised Union Paving that it was fully compliant with its obligations as of that date.  (Skeffington Decl. Ex. 5 ("Rushing Compliance Email") UP0056, Dkt. No. 25-3; *see also* DSUF 21 (asserting Union Paving's full compliance during period of October 11, 2018, through June 30, 2019).)

In October 2021, Plaintiffs requested to audit Union Paving regarding fringe benefit contributions for the period of October 2018 through the present.  (DSUF 17.)  Union Paving advised Plaintiffs through counsel that Union Paving had not been a signatory with Local 12 since June 30, 2019.  (DSUF 17.)  In April 2022, Sikorski sent Union Paving a letter notifying it that Local 12 was terminating its bargaining relationship with Union Paving upon the expiration of the Master Agreement in June 30, 2022.  (DSUF 19.)  Around the same time, Plaintiffs sent Union Paving another audit request.  (PAMF 38.)

Union Paving received no further requests for an audit or collection of fringe benefit contributions before Plaintiffs filed this lawsuit.  (DSUF 18.)

**B.**    **Procedure**

On December 19, 2024, Plaintiffs filed this action against Union Paving for breach of the Master Agreement and violation of ERISA § 515.  (DSUF 20; Compl., Dkt. No. 1.)  On March 5, 2025, Plaintiffs filed an amended complaint with the same cause of action.  (FAC ¶¶ 10–27.2.)  In May 2025, after the pleadings closed, the Court opened discovery.  (*See* Scheduling and Case Management Order ("Scheduling Order") 22, Dkt. No. 19.)  On July 25, 2025, with discovery just beginning, Union Paving filed its Motion for Summary Judgment.  (Mot.)[5]  Discovery remains ongoing. (*See* Scheduling Order 22 (initially setting fact discovery cutoff for January 27, 2026); Order Stip Modify 2, Dkt. No. 42 (continuing fact discovery cutoff to June 8, 2026, at the parties' request).)

### III.    LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A disputed fact is "material" where it might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The burden of establishing the absence of a genuine issue of material fact lies with the moving party.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

---

[5] The parties submit evidentiary objections.  (*See* Pls.' Evid. Objs.; Def.'s Evid Obj., Dkt. No. 38.) Where parties file numerous objections on a summary judgment motion, as Plaintiffs do here, it is "often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised."  *See Doe v. Starbucks, Inc.*, No. 8:08-cv-00582 AG (CWx), 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009).  So instead of hashing out each of Plaintiffs' objections here, the Court notes the following.  To the extent the Court relies on objected-to evidence in this Order, those objections are overruled.  The Court need not rule on Plaintiffs' remaining objections because it does not rely on the disputed evidence.  *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1122 (E.D. Cal. 2006) (proceeding with only necessary rulings on evidentiary objections).  The Court sustains Union Paving's single evidentiary objection.

Once the moving party satisfies its initial burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See id.* at 324; *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must show that there are "genuine factual issues that . . . may reasonably be resolved in favor of either party." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250) (emphasis omitted). Courts should grant summary judgment against a party who fails to make a sufficient showing on an element essential to her case when she will ultimately bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23.

In ruling on summary judgment motions, courts "view the facts and draw reasonable inferences in the light most favorable" to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted). Conclusory, speculative, or "uncorroborated and self-serving" testimony will not raise genuine issues of fact sufficient to defeat summary judgment. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

The Court may assume that material facts claimed and adequately supported are undisputed except to the extent that such material facts are (a) included in the opposing party's responsive statement of disputes *and* (b) controverted by declaration or competent written evidence. C.D. Cal. L.R. 56-4. The Court is not obligated to look any further in the record for supporting evidence other than what is actually and specifically referenced. *Id.*

6

## IV.    DISCUSSION

Union Paving argues the Court should grant summary judgment in its favor because (1) Plaintiffs' claims that Union Paving breached the Master Agreement and violated ERISA § 515 are barred by the statute of limitations, and (2) Union Paving was not bound to the Master Agreement after June 30, 2019, because Local 12 repudiated the bargaining relationship with Union Paving. (Mot. 1–2.)

### A.    Statute of Limitations

Union Paving first asserts that it is entitled to judgment as a matter of law because Plaintiffs filed this lawsuit a year after the statute of limitations expired. (*Id.* at 8–10.)

In ERISA actions, the federal courts apply the most analogous state statute of limitations. *N. Cal. Retail Clerks Unions & Food Emps. Joint Pension Tr. Fund v. Jumbo Markets, Inc.*, 906 F.2d 1371, 1372 (9th Cir. 1990). California's most analogous statute is the four-year statute of limitations governing actions involving written contracts. *Gordon v. Deloitte & Touche, LLP Grp. Long Term Disability Plan*, 749 F.3d 746, 751 (9th Cir. 2014); Cal. Civ. Proc. Code § 337. "Because the cause of action is federal, however, federal law determines the time at which the cause of action accrues." *Jumbo Markets*, 906 F.2d at 1372. "Under federal law that time is when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Id.*

Union Paving argues that the statute of limitations ran at least as early as December 19, 2024, one year before Plaintiffs filed this action. (Mot. 9–10.) On December 19, 2019, Plaintiffs' collections clerk, Rushing, emailed Union Paving advising that Union Paving was considered delinquent because it had not submitted recent Monthly Reports. (DSUF 14; Rushing Delinquency Emails UP0059.) That same day, Skeffington responded for Union Paving that it was not delinquent because it had not been signatory to the Master

Agreement since June 30, 2019, and had paid all dues owing through that date. (DSUF 14; Rushing Delinquency Emails UP0059.)    Union Paving contends this correspondence put Plaintiffs on notice that Union Paving disputed its obligation to comply with the Master Agreement at least as early as December 19, 2019. (Mot. 10.)    Based on that notice, the statute of limitations would have expired on December 19, 2024, one year before Plaintiffs filed this lawsuit. (*Id.*)

However, Plaintiffs contend the statute of limitations was not triggered by Skeffington's December 19, 2019 email because Union Paving continued conducting itself as though it were a signatory. (Opp'n 5, Dkt. No. 32.)    For instance, following Skeffington's email, Union Paving submitted an Inactive Status Form at Plaintiffs' request, in which Union Paving acknowledged that it was still obligated under the Master Agreement. (*Id.*; Inactive Status Form; Rushing Delinquency Emails UP0058.)    The form states that, although Union Paving was not employing Local 12 members at that time, should it employ Local 12 members in the future, Union Paving agreed to comply with "the terms and provisions as stated in our [Master Agreement] with [Local 12]." (Inactive Status Form.)    Nor does Union Paving dispute that its transfer to Inactive Status "did not change Union Paving's ongoing obligations under the Master Agreement." (PAMF 35 (citing Ramos Decl. ¶ 25); *see* Resp. PAMF 35 (undisputed).)    Plaintiffs also submit Union Paving's post-June 2019 Monthly Reports and requests for account status, further suggesting that Union Paving was acting as a signatory to the Master Agreement after June 2019. (*See* Ramos Decl. ¶ 21, Ex. 19 (Union Paving request for account status in October 2019), Dkt. No. 28-10; *id.* ¶ 19, Ex. 18 (Union Paving Monthly Reports for August 2019 and September 2019), Dkt. No. 28-9.)    Taken together, this supports Plaintiffs' argument that Union Paving continued conducting business after June 30, 2019, as though it were still signatory to the Master Agreement.

From this evidence, a reasonable jury could find that Union Paving completed

the Inactive Status Form only because Plaintiffs required it to take Union Paving off its delinquency list. A reasonable jury could also find that Union Paving requested its account status and submitted post-June 2019 Monthly Reports only as a matter of diligence, to ensure it remained off the delinquency list. However, viewing the evidence in favor of Plaintiffs, a reasonable jury could also find that even if Union Paving clearly notified Plaintiffs on December 19, 2019, that it rejected all signatory obligations, Union Paving subsequently reassured Plaintiffs through the Inactive Status Form that it recognized its signatory obligations and would continue to comply with the Master Agreement. As the evidence may reasonably be resolved in favor of either party, summary judgment based on the running of the statute of limitations is not appropriate. *Anderson*, 477 U.S. at 250 (noting summary judgment is not appropriate where genuine factual issues "may reasonably be resolved in favor of either party").

**B.   Repudiation**

Union Paving next argues that Union Paving was not bound to the Master Agreement after June 30, 2019, because Local 12 repudiated the bargaining relationship with Union Paving. (Mot. 10–17.)

The Master Agreement is considered a "pre-hire" agreement under section 8(f) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(f). (*See* Mot. 2 (arguing that either party can repudiate a section 8(f) pre-hire agreement like the one here); Opp'n 9 (arguing the evidence is unclear as to whether the section 8(f) pre-hire agreement here converted into a section 9(a) agreement).[6]) A "pre-hire" agreement is a CBA through which a construction industry employer recognizes a minority union as the exclusive bargaining representative for its employees. *Int'l Bhd. of Elec. Workers v. KBR Elec.*, 812 F.2d 495, 497–98 (9th Cir. 1987). Either party may repudiate a pre-hire agreement before the union attains majority status. *Id.*

As a threshold matter, Union Paving submits unrebutted evidence that Local 12 was never certified by the National Labor Relations Board as the

---

[6] Section 8(f) of the NLRA, 29 U.S.C. § 158(f); Section 9(a) of the NLRA, 29 U.S.C. § 159.

9

collective bargaining representative of Union Paving's employees, who never voted to be represented by Local 12. (DSUF 5.) Thus, Local 12 had not attained majority status during the relevant time and either party remained entitled to repudiate the agreement.

A party may repudiate by either (1) giving express notice or (2) engaging in conduct inconsistent with its contractual obligations. *KBR Elec.*, 812 F.2d at 498. Union Paving contends Local 12 repudiated the Master Agreement both expressly and through inconsistent conduct. (Mot. 10–17.)

### 1. Express Repudiation

A party may repudiate a pre-hire agreement by "giving actual notice" in writing or verbally to the other party. *KBR Elec.*, 812 F.2d at 498.

### a. Written notice

Union Paving first points to a March 29, 2019 letter ("March 2019 Letter") from Local 12 to Union Paving, advising that Local 12 "wished to reopen" the Master Agreement "for the purpose of changing or modifying wages, hours and working conditions" in the successor Master Agreement. (DSUF 7; Skeffington Decl. Ex. 2 ("March 2019 Letter"), Dkt. No. 25-3.) In the March 2019 Letter, Local 12 also advised that it did not "wish to include Union Paving Company in future multi-employer bargaining," but would continue to bargain with Union Paving on a single employer basis going forward if Union Paving wanted. (March 2019 Letter; DSUF 7.) Union Paving contends that, through the March 2019 Letter, Local 12 terminated the Master Agreement and collective bargaining relationship with Union Paving effective June 30, 2019. (Mot. 12–14.)

Plaintiffs dispute Union Paving's claimed effect of the March 2019 Letter. (Opp'n 6–8.) Plaintiffs contend the March 2019 Letter did not include an intent to "terminate," but rather merely to reopen negotiation of terms and adjust bargaining status. (*Id.*) Plaintiffs point, for comparison, to a subsequent letter Local 12 sent to

Union Paving on April 28, 2022, which Plaintiffs contend *does* reflect its intent to terminate its bargaining relationship with Union Paving. (*Id.*; Skeffington Decl. Ex. 8 ("April 2022 Letter"), Dkt. No. 25-3.) In contrast to the March 2019 Letter, the April 2022 Letter states that Local 12 "*will exclude* Union Paving Company from future multi-employer bargaining" concerning the Master Agreement, and that "Local 12 *will terminate* its bargaining relationship with Union Paving Company upon expiration of" the current Master Agreement. (April 2022 Letter (emphasis added).)

A reasonable jury comparing the language of the two letters could find that the March 2019 Letter excluded Union Paving from multi-employer bargaining, effectively terminating the bargaining relationship. However, viewing the evidence in favor of Plaintiffs, a reasonable jury could also find the March 2019 Letter merely sought to modify bargaining terms and statuses, but that the April 2022 Letter expressly and clearly notified Union Paving of Local 12's intent to "terminate" the bargaining relationship. As the evidence may reasonably be resolved in favor of either party, the March 2019 Letter is not determinative as a matter of law.

### b. Verbal notice

Second, Union Paving points to verbal statements Sikorski made on behalf of Local 12 about ending bargaining with Union Paving. (Mot. 13.) Specifically, Union Paving asserts that, during negotiations with SCCA and Union Paving in July and September 2019, Sikorski told Union Paving and SCCA representatives that "Local 12 would not sign new [CBA]s with Union Paving . . . because [Skeffington's father] owned non-union paving companies." (Decl. Steven Atkinson ISO Mot. ¶ 7, Dkt. No. 25-3; Skeffington Decl. ¶ 7, Dkt. No. 25-3; Decl. Wes May ISO Mot. ¶ 7, Dkt. No. 25-3.) Plaintiffs object to Union Paving's declaration evidence of Sikorski's statements as inadmissible hearsay. (Pls.' Evid. Objs. DSUF 8.) However, Union Paving argues that, if Sikorski's statements that Local 12 would not sign new CBAs with Union Paving are clearly repudiating, they are not hearsay but verbal acts of legal significance. (*See* Reply 7–8, Dkt. No. 37.)

Regardless, even considering that Sikorski made the attributed statements, they are not dispositive here.  According to Union Paving, Local 12 terminated the Master Agreement with Union Paving effective June 30, 2019.  (*See, e.g.*, Mot. 13.)  According to Plaintiffs, Local 12 terminated the Master Agreement with Union Paving effective June 30, 2022.  (*See, e.g.*, Opp'n 7–8.)  Sikorski's comments, in July and September 2019, could be viewed as applying to either scenario.  Thus, viewing the facts in favor of Plaintiffs, a reasonable jury could perceive Sikorski's statements in July and September 2019 as forward-looking, toward the next Master Agreement renewal date in June 2022.

> 2.    *Repudiation by Inconsistent Conduct*

Repudiation by conduct requires conduct so "overtly inconsistent with contractual obligations that it is sufficient to put" the other party on clear notice of the intent to repudiate.    *KBR Elec.*, 812 F.2d at 498; *United Bhd. of Carpenters & Jointers of Am. v. Endicott Enters., Inc.*, 806 F.2d 918, 922–23 (9th Cir. 1986) (holding that employer may repudiate pre-hire agreement by conduct).

Union Paving argues that, in June and July 2019, all Union Paving employees who were members of Local 12 resigned from Union Paving, advising Skeffington that Local 12 would not allow them to work for Union Paving "because it was not signatory to a [CBA] with Local 12." (DSUF 11; Skeffington Decl. ¶ 8.)  However, the statements of Union Paving's employees regarding the reason for their resignation is inadmissible hearsay, and Union Paving identifies no exception.  (Pls.' Evid. Objs. DSUF 10.)  Although a court may deny a summary judgment motion on the basis of hearsay evidence if the evidence could be presented in an admissible form at trial, a court may not *grant* a summary judgment motion on the basis of hearsay evidence.  *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003).  Thus, the Court sustains Plaintiffs' hearsay objection to this declaration testimony and does not consider it for purposes of Union Paving's implied repudiation arguments.  (Skeffington Decl. ¶ 8 (3:17–20).)

Union Paving also argues that, since July 2019, when Skeffington contacted Local 12's hiring hall to request dispatch of workers, Local 12 refused to dispatch workers to Union Paving jobs "because it was not signatory to a [CBA] with Local 12." (DSUF 11; Skeffington ¶ 8.) Plaintiffs object that the statements of unidentified Local 12 representatives are hearsay without an exception, because Plaintiffs are the party-opponent here, and not Local 12. (Pls.' Evid Objs. DSUF 10.) However, Plaintiffs bring this action as third-party beneficiaries to Local 12's CBAs, (PAMF 26), which blurs the line of party-opponent here.

Regardless of the statements' admissibility, Plaintiffs contend the dispatch of workers required "reasonable advanced notice," and Union Paving does not establish that it complied with this requirement when requesting dispatch. (Opp'n 13.) Plaintiffs have requested discovery on the issue to support their opposition here, but had not received that discovery as of the opposition deadline. (PAMF 40–44; Opp'n 13 (arguing that discovery is ongoing and necessary for Plaintiffs to respond to Union Paving's assertion that Local 12 refused to dispatch members because of Union Paving's signatory status); Decl. Daniela I. Dykes ISO Opp'n ("Dykes Decl.") ¶ 24, Dkt. No. 29 (declaring that Plaintiffs requested discovery from non-party Local 12 concerning Union Paving's collective bargaining negotiations and dispatch history).) Thus, summary judgment on the grounds that Local 12 repudiated the Master Agreement with Union Paving by refusing to dispatch workers to Union Paving jobs is premature. Fed. R. Civ. P. 56(d).

Union Paving chose to move for summary judgment early, well before the close of discovery and while the parties were still contentiously disputing discovery responses. (Scheduling Order 22; Dykes Decl. ¶¶ 17–24.) Had Union Paving waited to file its Motion until discovery was complete, it may have been able to put forward more compelling and definitive evidence. However, on the present papers, summary judgment based on repudiation is not appropriate.

## C.    Partial Summary Judgment

In the alternative, Union Paving requests partial summary judgment on Plaintiffs' claim that Union Paving breached the Master Agreement prior to June 30, 2019.  (Mot. 15 n.3, 17.)

The parties agree that the Master Agreement required Union Paving to submit Monthly Reports to Plaintiffs, subcontract work only to signatories to the Master Agreement, timely pay fringe benefit contributions, and permit audits of Union Paving's payroll and related records.  (DSUF 21; PSGD 21; PAMF 28.)  Union Paving submits declaration testimony that it timely complied with these obligations, Local 12 never requested an audit or records, and Union Paving never denied an audit or request for records for the period of October 11, 2018, through June 30, 2019.  (DSUF 21; Skeffington Decl. ¶ 13.)  Specifically, during the discovery process in this action, Union Paving produced to Plaintiffs all payroll and business records establishing Union Paving's compliance for this period.  (Skeffington Decl. ¶ 14.)  And although Plaintiffs had all of these records, Plaintiffs do not effectively dispute that Union Paving fully complied with its Master Agreement obligations prior to June 30, 2019.  Plaintiffs submit an October 2021 audit request and argue Union Paving did not comply, (Opp'n 4; Ramos Decl. ¶¶ 30–31, Ex. 21 ("October 2021 Audit Request"), Dkt. No. 35; PAMF 37), but Plaintiffs submit nothing that calls into doubt Union Paving's full compliance with the Master Agreement during the time period Union Paving identifies: prior to June 30, 2019.

Union Paving also submits the email from Rushing, Plaintiffs' agent, establishing that as of December 20, 2019, Union Paving was in full compliance with all obligations, even assuming the Master Agreement remained operative after June 30, 2019.  (*See* Rushing Compliance Email UP0056 (confirming Union Paving's account reflected no delinquencies).)

Accordingly, Union Paving establishes that there are no triable issues of material fact and it is entitled to judgment as a matter of law on Plaintiffs' claim that Union

14

Paving breached the Master Agreement during the period of October 11, 2018, through June 30, 2019.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Union Paving's Motion for Summary Judgment. (Dkt. No. 25.) Specifically, the Court **GRANTS** Union Paving's Motion on Plaintiffs' claim that Union Paving breached the Master Agreement during the period of October 11, 2018, through June 30, 2019.  The Court **DENIES** Union Paving's Motion in all other respects.

**IT IS SO ORDERED.**

February 3, 2026

                       **OTIS D. WRIGHT, II**
             **UNITED STATES DISTRICT JUDGE**